STATE of Wisconsin,
Plaintiff-Respondent,

v.

Brad S. MILLER,
Defendant-Appellant.†

Court of Appeals

*No. 2004AP1406–CR. Submitted on briefs February 17, 2005.
—Decided April 27, 2005.*

2005 WI App 114

(Also reported in 701 N.W.2d 47.)

† Petition to review denied 8-25-05.

465

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Shunette T. Campbell*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J.   Brad S. Miller appeals from a judgment of conviction for operating a motor vehicle while intoxicated, fifth offense, (OWI) contrary to Wis. Stat. § 346.63(1)(a) (2003–04),[1] and an order denying his postconviction motion. He raises two arguments on appeal. First, in the context of an ineffective assistance of counsel claim, he maintains that the State's recommendations to the sentencing court breached the plea agreement. Next, he submits that the trial court lacked the authority to order him to fulfill his child support obligations in an unrelated paternity action as a condition of extended supervision for his OWI conviction. We hold that because Miller's counsel consulted with Miller and gained his consent before choosing not to object to the State's alleged breach of the plea agreement, Miller's counsel's performance was not deficient. We also conclude that the trial court had the authority to order Miller to fulfill his child support obligations as a condition of extended supervision. The condition served the dual goals of supervision and was therefore reasonable and appropriate under the circumstances. Accordingly, we affirm the judgment of conviction and the order denying Miller's postconviction motion.

## FACTS

¶ 2.   In December 2000, the State filed a criminal complaint against Miller. The complaint alleged that Miller had operated a motor vehicle while intoxicated, as a fifth offense, in violation of Wis. Stat. § 346.63(1)(a). At the plea hearing, the parties informed

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

the court that a plea agreement had been reached. Miller agreed to enter a plea of no contest to the OWI charge and in exchange the State agreed to recommend a sentence of one year in jail, a fine of $1825 and a twenty-eight-month driver's license suspension. After the plea hearing, but prior to sentencing, Miller apparently left the state and he failed to return for subsequent hearings. In February 2003, Miller was convicted of OWI in Iowa.

¶ 3.  At the August 2003 sentencing hearing, the State recommended "a probation term of 5 years, 12 months jail, a fine totaling $1825 and 28 month revocation of [Miller's] driver's license." The State represented to the court that these were the terms of the original plea agreement and, despite Miller's conduct since the plea hearing, the State was going to abide by those terms. Miller's counsel initially objected to the recommendation of five years' probation because it was not a term in the original plea agreement. The following exchange then took place:

> [The State]:  [Miller's counsel] and I spoke yesterday about this case and I told him I was going to be asking for probation based upon what he told me about [the State's] earlier offer . . . . We discussed the fact that I would ask [for] probation. He did not tell me that [the State] had not asked for probation, so I'm somewhat surprised by that. I was depending upon [Miller's counsel] telling me what the deal was here and he did not say to me no, no probation. As I said at the beginning of this hearing, I was contemplating whether I should withdraw the plea agreement, given Mr. Miller's actions after the plea, and I think that the State certainly would be able to withdraw a plea agreement and, perhaps, Mr. Miller would be able to withdraw his plea.
>
>   . . . .

469

[Miller's counsel]: And in regards to [the State's] comment, I guess I was just responding to what my understanding was of the plea agreement at the time we entered the plea and, you know, granted, I mean, I'll agree that [the State] did tell me yesterday that he was going to recommend probation, but—and—

[The State]: And at no point did [Miller's counsel] say that wasn't the agreement. I mean, that would have been the time to say, "Mike, that's a problem. Why don't we walk down and look at the Court file."

[Miller's counsel]: Okay. Fine. He can recommend probation, that's fine.

Following the hearing, the court sentenced Miller to two years' incarceration and three years' extended supervision. As a condition of extended supervision, the court ordered Miller to maintain the payment of his child support obligations owed pursuant to a 1991 paternity action.[2] The court also ordered that Miller "maintain employment to a reasonable degree of effort," "complete an AODA assessment," and "maintain absolute sobriety."

¶ 4. Miller filed a postconviction motion. He argued that the State breached the plea agreement when it recommended the five-year probation term and his trial counsel's failure to object constituted ineffective assistance of counsel. He further maintained that the trial court lacked the authority to order the payment of child support obligations from an unrelated civil paternity case as a condition of extended supervision.

¶ 5. At the postconviction motion hearing, Miller's counsel testified that he initially objected to the prosecutor's probation recommendation because the

---

[2] A presentence investigation report indicated that Miller owed $14,000 in child support arrearages.

original plea negotiations had not included such a term. Miller's counsel testified that he consulted with Miller during the sentencing hearing about whether he wished to withdraw his plea. Miller indicated that he wished to continue with sentencing. Miller's counsel testified that he did not discuss with Miller specific performance of the plea bargain as an alternative to plea withdrawal because he did not think it was an option under the circumstances of the case. Miller's counsel explained that he ultimately conceded that the State could recommend five years' probation because it was his understanding of Wisconsin law that Miller's intervening criminal drunk driving offense in Iowa empowered the State "to, basically, withdraw its offer or change the offer."

¶ 6. The trial court denied Miller's motion. The court determined that while the State breached the plea agreement, Miller's counsel's performance was not deficient because he consulted with Miller about the possibility of withdrawing the plea before choosing not to object to the breach. The court further rejected Miller's challenge to the condition of extended supervision requiring him to maintain his child support payments, stating:

He had various relationships, he has children, he's severely behind in his child support and it struck me and I took from reading the PSI that the—the idea that Department of Corrections was driving at was that there was some overall interrelated instability with Mr. Miller that if he could—one fed upon the other, that if he could get his alcohol under control, be current with his child support, maintain a job, stay out of trouble, that things would be better in his life and in my—my order, in my idea in ordering the child support, was just

471

that. It was going along with their recommendation, thinking that he needs to have some overall stability to rehabilitate him.

Miller appeals from the judgment of conviction and the order denying his postconviction motion.

## DISCUSSION

### *Breach of the Plea Agreement*

¶ 7. When Miller failed to object to the State's alleged breach at the sentencing hearing, he waived his right to directly challenge the alleged breach of the plea agreement. *See State v. Howard,* 2001 WI App 137, ¶ 12, 246 Wis. 2d 475, 630 N.W.2d 244. Therefore, this case comes to us in the context of an ineffective assistance of counsel claim. A trial court's ineffective assistance of counsel analysis involves mixed questions of law and fact. *Id.,* ¶ 23. The trial court's factual findings will not be reversed unless they are clearly erroneous; however, issues bearing on whether trial counsel's conduct was deficient and prejudicial are questions of law that this court reviews de novo. *Id.*

¶ 8. In *State v. Sprang,* 2004 WI App 121, 274 Wis. 2d 784, 683 N.W.2d 522, we explained that when a prosecutor breaches a plea agreement by arguing for a harsher sentence than the one the prosecutor agreed to recommend and defense counsel fails to object, the agreement has "morphed" into a new agreement. *See id.,* ¶ 27; *see also State v. Liukonen,* 2004 WI App 157, ¶ 21, 276 Wis. 2d 64, 686 N.W.2d 689 (reaffirming the principles articulated in *Sprang*). Thus, defense counsel must consult with the defendant and receive verification that the defendant wishes to proceed with the

472

"new" plea agreement. *See Sprang*, 274 Wis. 2d 784, ¶ 28; *see also Liukonen*, 276 Wis. 2d 64, ¶ 21. The *Sprang* decision teaches that even a strategically sound decision by defense counsel to forego an objection to a prosecutor's breach without consulting with the defendant constitutes deficient performance because it is "tantamount to entering a renegotiated plea agreement without [the defendant's] knowledge or consent." *Sprang*, 274 Wis. 2d 784, ¶ 29; *see also Liukonen*, 276 Wis. 2d 64, ¶ 21.

¶ 9. The transcript from the postconviction motion hearing indicates that Miller's counsel had a strategically sound reason for not objecting to the State's alleged breach. He had essentially concluded that Miller would not be able to prevail on a breach of plea agreement claim because of Miller's criminal conduct in Iowa prior to sentencing. *See State v. Windom*, 169 Wis. 2d 341, 351–52, 485 N.W.2d 832 (Ct. App. 1992) (the fact that the defendant violated the terms of his probation was a "new and additional" factor that the State was entitled to consider in the subsequent and separate sentence hearing); *State v. Giebler*, 591 P.2d 465, 467 (Wash. Ct. App. 1979) (defendant cannot rely upon an agreement when he commits another offense while awaiting sentencing); *United States v. Read*, 778 F.2d 1437, 1441–42 (9th Cir. 1985) (promise to "take no position on what sentence should be imposed" does not cover defendant's postplea criminality). The transcript further reveals that, during the sentencing hearing, Miller's counsel consulted with him about whether he wished to withdraw his plea or proceed with the sentencing hearing based on the "new" plea agreement. The transcript establishes that Miller consented to continuing with the sentencing hearing. Because Miller's counsel had a sufficient strategic reason for not

473

objecting to the "new" agreement and he consulted with Miller and secured his consent to proceed, his performance was not deficient. *See Sprang*, 274 Wis. 2d 784, ¶¶ 27–30; *Liukonen*, 276 Wis. 2d 64, ¶¶ 20–22. Accordingly, Miller's ineffective assistance of counsel challenge must fail.

## Condition of Extended Supervision

¶ 10.   Miller maintains that the condition of his extended supervision ordering him to fulfill his child support obligations from the 1991 paternity action was not authorized under WIS. STAT. § 973.01(5), which allows courts imposing a bifurcated sentence to "impose conditions upon the term of extended supervision." According to Miller, the court lacked the authority to impose the condition because his child support obligations arose from a case unrelated to the underlying conviction and statutory remedies already exist for the nonpayment of child support.

¶ 11.   Miller seems to suggest that in all cases a condition of extended supervision must directly relate to the defendant's criminal conduct in the underlying conviction. That is not the law. Trial courts are granted broad discretion in determining conditions necessary for extended supervision; such discretion is subject only to a standard of reasonableness and appropriateness. *State v. Koenig*, 2003 WI App 12, ¶ 7, 259 Wis. 2d 833, 656 N.W.2d 499 (Ct. App. 2002). Whether a condition of extended supervision is reasonable and appropriate is determined by how well it serves the dual goals of supervision:   rehabilitation of the defendant and the protection of a state or community interest. *See id.*

¶ 12. In *State v. Miller*, 175 Wis. 2d 204, 208–09, 499 N.W.2d 215 (Ct. App. 1993), we were confronted with the question of whether conditions of probation must relate to the offense for which the defendant is convicted. There, the defendant was convicted of burglary and theft. *Id.* at 207. The defendant, who had been convicted in recent years for harassing telephone calls to women, attacked a condition of his probation that prohibited him from telephoning any woman without the permission of his probation officer. *Id.* at 207–08. We recognized that while the defendant's past criminal conduct of making sexually explicit telephone calls to women was unrelated to the offenses for which he was convicted, the defendant needed to be rehabilitated from that conduct. *Id.* at 209–10. Because the condition was rationally related to the defendant's need for rehabilitation, it was "reasonable and appropriate" as required by the probation statute. *Id.* at 210.

¶ 13. As *Miller* teaches, a condition of extended supervision need not directly relate to the offense for which the defendant is convicted as long as the condition is reasonably related to the dual purposes of extended supervision.[3] *See State v. Beiersdorf*, 208 Wis. 2d 492, 503 n.9, 561 N.W.2d 749 (Ct. App. 1997) (stating the *Miller* court's holding as follows, "condition of probation need not directly relate to crime for which defendant placed on probation where defendant needs to be rehabilitated from related conduct"). The condition imposed in this case serves both of those objectives.

[3] Case law relating to the propriety of conditions of probation is applicable to conditions of supervision. *State v. Koenig*, 2003 WI App 12, ¶ 7 n.3, 259 Wis. 2d 833, 656 N.W.2d 499 (Ct. App. 2002).

¶ 14.   First, while Miller's past criminal conduct of failing to fulfill his court-ordered child support obligations is unrelated to the OWI offense for which he was convicted, like the defendant in *Miller*, he needs to be rehabilitated from that conduct. As the trial court pointed out at sentencing, Miller has persistently failed to own up to his responsibilities and obligations. His employment history is sketchy, he has at least twenty-two prior convictions, he blames others in his life for his OWI conviction and the presentence investigation report indicates that Miller owes over $14,000 in child support arrearages. The condition of extended supervision requires Miller to learn responsibility—he will be obligated to secure stable employment and make regular child support payments in compliance with the 1991 court order. Thus, the condition demands that Miller take positive action in important aspects of his life. This could enhance his self-esteem and his sense of responsibility to himself, his child and the community, matters clearly relevant to rehabilitation.

¶ 15.   Second, the condition of extended supervision obviously protects important state and community interests. Because he will ostensibly learn to live more responsibly, he will be less likely to drink and drive. Further, the condition relates to the support and well-being of a child, a clear community interest.

¶ 16.   Miller also incorrectly assumes that because there are other statutes concerning sanctions and penalties for the payment of child support,[4] the trial court did not have the authority to impose fulfillment of child support obligations as a condition of extended supervi-

---

[4] Specifically, he cites to WIS. STAT. §§ 767.30(3)(b) (contempt), 767.303(1) (suspension of privileges to operate a motor vehicle), and 948.22(2) and (3) (criminal prosecution as either a Class I felony or a Class A misdemeanor).

sion. WISCONSIN ADMIN. CODE § DOC 328.04(3)(a) (Nov. 2002) provides that the written rules of supervision *shall* include a requirement that the person is to "[a]void all conduct which is in violation of state statute, municipal or county ordinances or which is not in the best interest of the public welfare or his or her rehabilitation." WISCONSIN STAT. § 948.22 criminalizes the nonpayment of child support. Therefore, pursuant to the general administrative code provision concerning extended supervision, Miller would be required to maintain his child support payments. We see no reason why the trial court could not then specifically impose a condition that directly relates to criminal behavior and so clearly advances the public welfare and the defendant's rehabilitation.[5]

---

[5] Contrary to Miller's assertions, this is not a case like *State v. Oakley*, 2000 WI 37, 234 Wis. 2d 528, 609 N.W.2d 786, or *State v. Martel*, 2003 WI 70, 262 Wis. 2d 483, 664 N.W.2d 69, where the courts determined that the challenged conditions were in direct conflict with other statutes. *Oakley*, 234 Wis. 2d 528, ¶ 27 (holding that the circuit court's order of payment of an old fine as a condition of probation on a ten-year felony "conflicts with the clear statutory mandate in WIS. STAT. § 973.07 that incarceration for failure to pay a fine is limited to incarceration in county jail for no more than six months"); *Martel*, 262 Wis. 2d 483, ¶¶ 28–35 (holding that the court lacked the authority to order sex-offender registration as a condition of probation where the statutes that more specifically governed sex-offender registration did not apply). Miller does not offer, and we do not find, any support for the position that the statutes he cites were intended to specifically limit the means of collecting child support to contempt of court, suspension of driving privileges or criminal prosecution under WIS. STAT. § 948.22. Indeed, the purpose behind the child support laws is to protect the child and his or her best interests. *See Rottscheit v. Dumler*, 2003 WI 62, ¶ 35, 262 Wis. 2d 292, 664 N.W.2d 525. Imposing as a condition of extended supervision the fulfillment of child support obliga-

## CONCLUSION

¶ 17.   Because Miller's counsel consulted with him and obtained his consent to proceed before choosing, for sound reasons, not to object to the State's recommendation of probation in addition to the other agreed-upon terms, Miller's counsel's performance was not deficient and Miller's ineffective assistance claim fails. Further, the condition of extended supervision that Miller maintain his child support payments is reasonable and appropriate—it is reasonably related to his rehabilitation and the protection of a community or state interest. The condition therefore is in compliance with WIS. STAT. § 973.01(5). Accordingly, we affirm the judgment of conviction and the order denying Miller's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

---

tions furthers, rather than conflicts with, that purpose by emphasizing parental responsibility and promoting payment of child support.